*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RODRIGUEZ-STAPLETON/RODRIGUEZ,
Minors.

UNPUBLISHED
February 18, 2025
1:50 PM

No.  371992
St. Clair Circuit Court
Family Division
LC No.  24-000031-NA

Before:  YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor children, NRS and ER, under MCL 712A.19b(3)(k)(*ii*) (parent's abuse of sibling included criminal sexual conduct involving penetration) and (k)(*ix*) (parent's abuse of sibling included sexual abuse).  We affirm.

## I.  FACTUAL BACKGROUND

Respondent is the father of NRS and ER; their mother has two other children, JS and HT.[1] Before the filing of the instant petition, NRS and ER lived in an apartment with respondent and their mother, while HT and JS lived with HT's paternal grandmother.  The children's mother exercised weekend and holiday parenting time with HT and JS at the apartment she shared with respondent.  The trial court acquired jurisdiction over NRS and ER after the Department of Health and Human Services (DHHS) filed a petition for child protective proceedings, alleging that respondent sexually abused HT and requesting termination of respondent's parental rights under MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*).  The petition alleged that HT, who was five years old, disclosed during a forensic interview that respondent "[stuck] his wiener in her butt" on numerous

---

[1] Respondent is not the biological father of JS or HT who each have different biological fathers. The children's mother and the biological fathers were not respondents to the instant petition. Because the instant petition pertained only to NRS and ER, this opinion's use of the collective term "children" refers only to NRS and ER.

-1-

occasions at the home he shared with the children's mother. After a preliminary hearing, the trial court authorized the petition, placed the children with their mother and ordered that respondent be removed from the home.

After the adjudication hearing, the trial court found that there were grounds to exercise jurisdiction over the children under MCL 712A.2(b)(1) and (2) based upon respondent's sexual abuse of HT. Subsequently, a termination and best-interests hearing was held. The trial court thereafter found that petitioner established by clear and convincing evidence statutory grounds to terminate respondent's parental rights under MCL 712A.19b(k)(*ii*) and (k)(*ix*). The trial court also found that termination of respondent's parental rights to NRS and ER was in the best interests of the children. The trial court thereafter entered an order terminating respondent's parental rights. Respondent now appeals.

## II. STATUTORY GROUNDS

The trial court did not clearly err by finding clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews for clear error a trial court's finding that there are statutory grounds for termination of a respondent's parental rights. *Id*. "A trial court's decision is clearly erroneous '[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (alteration in original). In other words, a decision must be more than maybe or probably wrong to be considered clearly erroneous. *In re Sours*, 459 Mich 624, 633; 593 NW2d 520 (1999) (citations omitted). Further, "[t]his Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014); see, also, MCR 2.613(C).

Under MCL 712A.19b(3)(k)(*ii*), a trial court may terminate a parent's parental rights if it finds by clear and convincing evidence that the parent abused a child or a sibling of the child, the abuse included criminal sexual conduct involving penetration, and there is a reasonable likelihood that the child will be harmed if returned to the parent. Under MCL 712A.19b(3)(k)(*ix*), a trial court may terminate parental rights if it finds by clear and convincing evidence that the parent abused a child or a sibling of the child, the abuse involved sexual abuse as defined in MCL 722.622, and there is a reasonable likelihood that the child will be harmed if returned to the home of the parent. Under MCL 722.622(q), "sexual abuse" means "sexual penetration, sexual contact, attempted sexual penetration, or assault with intent to penetrate[.]"

The trial court did not clearly err by finding clear and convincing evidence to terminate respondent's parental rights under either or both MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*). In support of its findings that respondent sexually abused a sibling of the children and the abuse included criminal sexual conduct involving penetration, the trial court relied upon statements HT made

during a forensic interview, noting that her statements "included information that would not otherwise be known to a five-year[-]old," and there was no evidence that HT had a motive to fabricate the allegations. The evidence presented during this case demonstrated that, when HT was forensically interviewed, she reported that "Daddy David" "sticks his wiener in [her] butt." HT further disclosed that: this happened at night; on numerous occasions at her mother's home in a bedroom; her clothes were off; Daddy David's "wiener" had hair on it; white and clear fluids came out of it; and he made a groaning sound. Port Huron Police Department Detective Travis Reed testified that, when he interviewed the child's mother, she reported that HT referred to respondent as "Daddy David" and referred to the male genitalia as "wiener." Further, HT's paternal grandmother testified that when HT first told her what respondent did, HT made a back and forth motion with her hand to demonstrate what happened with respondent's "wiener" and her butt. HT's paternal grandmother also testified that HT exhibited behavioral changes since the disclosure of abuse, including that HT would wake in the night and want to sleep with her; HT exhibited signs of anxiety if her mother or Daddy David were mentioned, including getting fidgety and acting scared; and would startle if she woke up while her paternal grandmother was putting Pull-Up underpants on her for bedtime. Accordingly, the trial court did not clearly err by finding that petitioner presented clear and convincing evidence that respondent sexually abused HT, a sibling of the children at issue here, and the abuse included criminal sexual conduct involving penetration.

Nor did the trial court clearly err by finding clear and convincing evidence that there is a reasonable likelihood that the children would be harmed if returned to respondent. This finding was supported by the evidence demonstrating that respondent sexually abused HT on numerous occasions in a bedroom at the home where the children live and sleep, while the children were in the home. Moreover, this Court has repeatedly recognized that "how a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Respondent's sexual abuse of HT, therefore, is probative of how he may treat NRS and ER. Further, as the trial court noted, there was a reasonable likelihood of harm because of respondent's failure to address his "sexual deviance."[2] That is, the children "could be targets of abuse, or [they] could witness respondent in an act of abuse upon another minor." Moreover, the court noted, "there is the risk of emotional and psychological harm inherent in the complicated dynamic of a family member sexually abusing another family member." These conclusions were supported by the evidence.

On appeal, respondent argues that there was not clear and convincing evidence to support that he sexually abused HT because: (1) there was no physical evidence of sexual abuse; (2) petitioner did not call HT as a witness in the instant proceeding, instead relying upon the hearsay testimonies of HT's paternal grandmother and Bailey Pionk, the forensic interviewer who conducted HT's interview; (3) HT testified in the criminal proceeding that respondent only touched her arm; and (4) the children's mother testified that respondent was never alone with the children and would not have had an opportunity to sexually abuse HT. These arguments are unpersuasive.

---

[2] Detective Reed also testified that respondent admitted to him that there was another side of him that he tried to keep locked up because of his own trauma.

It is true that no physical evidence of sexual abuse was presented; however, neither MCL 712A.19b(3)(k)(*ii*) nor (k)(*ix*) require physical evidence to support a finding of sexual abuse.[3] Thus, it is immaterial that petitioner did not present physical evidence of sexual abuse.

It is also true that petitioner did not present HT's live testimony in the instant proceedings, instead presenting statements HT made at the forensic interview through the testimony of Pionk. However, MCR 3.972(C) provides:

> (2) *Child's Statement*. Any statement made by a child under 10 years of age . . . regarding an act of child abuse, child neglect, confirmed sexual abuse, or confirmed sexual exploitation, as defined in MCL 722.622(g), (k), (q), or (r), performed with or on the child by another person may be admitted into evidence through the testimony of a person who heard the child make the statement as provided in this subrule.

> (a) A statement describing such conduct may be admitted regardless of whether the child is available to testify or not, and is substantive evidence of the act or omission if the court has found, in a hearing held before trial, that the circumstances surrounding the giving of the statement provide adequate indicia of trustworthiness. The statement may be received by the court in lieu of or in addition to the child's testimony. [MCL 3.972(C)(2)(a).]

Before trial, petitioner filed a notice of intent to introduce HT's statements during the forensic interview under MCR 3.972(C)(2). The referee conducted a hearing and determined that the circumstances surrounding the statements provided adequate indicia of trustworthiness, and the trial court admitted the statements under that rule. Respondent did not challenge this evidentiary ruling in the trial court, nor does respondent argue on appeal that the trial court erred by admitting HT's statements under MCR 3.972(C)(2). Because HT's statements were admitted under MCR 3.972(C)(2), the trial court was permitted to consider the statements as substantive evidence that respondent sexually abused HT in lieu of receiving HT's live testimony. MCR 3.972(C)(2)(a). Accordingly, the absence of HT's live testimony does not render the record evidence insufficient to support the trial court's finding that respondent sexually abused a sibling of the children.

With respect to respondent's arguments concerning HT's preliminary examination testimony and her mother's testimony concerning respondent's access to HT, these arguments can be distilled down to attacks on HT's credibility. It is true the evidence demonstrated that when HT was called to testify at a preliminary examination in an attendant criminal proceeding against respondent she testified respondent only touched her arm. However, as Detective Reed explained during his testimony, that proceeding occurred in an open courtroom in the district court and the gallery was fairly full of people HT did not know. The judge, the attorneys, and respondent himself—who was 10 to 12 feet away from HT—were also present. It is also true that the

_____

[3] HT was taken to McLaren Hospital but no actual sexual abuse examination was performed there. Further, HT's paternal grandmother testified that when she attempted to visually inspect HT's butt after HT told her what respondent had done, HT did not want her grandmother to look at her butt.

children's mother testified that respondent was never alone with her children and would not have had an opportunity to sexually abuse HT. However, she also testified that one night HT woke her up crying at about 2:30 am after she had seen HT asleep at midnight - respondent was downstairs awake and sitting at his computer while the children's mother had been asleep in their bedroom. Accordingly, the trial court's credibility findings were aptly supported by the evidence and we defer to those findings. See *In re TK*, 306 Mich App at 710; see, also, MCR 2.613(C). That is, HT's statements to Pionk were credible notwithstanding her testimony at respondent's preliminary examination; the disclosures included information that would not otherwise be known to a five-year-old child and there was no evidence demonstrating a motive for HT to fabricate the allegations. Further, the children's mother's testimony that respondent had no opportunity to sexually abuse HT was not credible. Respondent's arguments concerning HT's credibility are, thus, unpersuasive. The record evidence supported the trial court's finding that petitioner presented clear and convincing evidence to support termination of respondent's parental rights under either or both MCL 712A.19b(3)(k)(*ii*) and (k)(*ix*). Again, only one statutory ground for termination need be established by clear and convincing evidence. MCL 712A.19b(3). Accordingly, respondent has not established that the trial court clearly erred in terminating his parental rights to the children.

## III. BEST INTERESTS

The trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests.

Even if a trial court finds that statutory grounds for termination are established by clear and convincing evidence, "it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's determination regarding a child's best interests for clear error. *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021). A trial court's finding is clearly erroneous "[i]f although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App at 41 (quotation marks and citation omitted).

With respect to the termination of parental rights, "[t]he focus at the best-interest stage has always been on the child, not the parent." *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022) (quotation marks and citation omitted). In making its determination, the trial court should weigh all of the evidence available to it and may consider the child's bond to the parent, the parent's parenting ability, the child's safety and well-being, as well as whether the parent can provide a permanent, safe, and stable home. *Id*. at 346-347 (quotation marks and citation omitted); *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012); *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). When a child is placed with a relative, the child's relative placement at the time of the termination hearing "is an explicit factor to consider" in determining the best interests of the child. *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citation omitted). MCL 712A.13a(1)(j)(*i*) defines "relative" as a person who is at least 18 years of age and is "[r]elated to the child within the fifth degree by blood, marriage, or adoption . . . ." This includes a child's biological parent. Further, "[i]n making its best-interest determination, the trial court

may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

The trial court did not clearly err by finding that termination was in the children's best interests. In determining the best interests of the children, the trial court considered the evidence that respondent sexually abused HT while the children were in the home. The trial court also considered the children's placement with their mother, noting her testimony that she did not believe respondent committed the abuse and that she would allow respondent to return to the home if she were not prohibited from doing so. The trial court additionally considered that there may be a bond between respondent and the children, but found that the risk of harm respondent posed to the children outweighed any bond they shared with him. With respect to respondent's parenting ability, the trial court found that it was "impinged by his inability to restrain from sexual abuse of the minors' half-sister."

These findings were supported by the record evidence. HT's paternal grandmother testified that, after HT stayed overnight with respondent and her mother following the Christmas 2023 holiday, HT disclosed that she was disciplined at respondent's home because "Daddy David wanted to stick his wiener in [her] butt." During her forensic interview, HT disclosed that respondent "[stuck] his wiener in [her] butt" on numerous occasions at the home he shared with the children and their mother. The children's mother testified that all four children were in the home during HT's visit following the Christmas 2023 holiday. Moreover, the children's mother opined that HT would be safe around respondent if the visitation was supervised, but also testified that respondent was never alone with HT before the allegations arose, and did not believe that respondent sexually abused HT. From this evidence, the trial court could conclude that, notwithstanding their placement with their mother, termination of respondent's parental rights was in the children's best interests because the children's mother expressed a willingness to allow respondent back into the home, thereby putting the children at risk of sexual abuse and emotional harm, if his rights were not terminated.

On appeal, respondent argues that the trial court erred by finding that termination was in the children's best interests because the children are young and the evidence demonstrated that respondent was a good parent. These arguments are unpersuasive. As an initial matter, respondent does not articulate how the young ages of the children weigh against termination of his parental rights, nor can we discern this from the record. Indeed, HT was five years old at the time of the sexual abuse; thus, the children's young ages render them similarly situated to HT at the time that respondent abused her. Further, although the children's mother testified that respondent was a good and active parent, the trial court found her testimony not to be credible, citing that she was defensive of respondent, and that respondent's sexual abuse of HT demonstrated that respondent's parenting ability was impaired. Though respondent may disagree with the trial court's best-interests determination, the court's findings were supported by the record evidence, and we are not left with the definite and firm conviction that the trial court made a mistake by finding that termination of respondent's parental rights was in the children's best interests. Accordingly,

respondent has not established the trial court clearly erred by finding that termination of his parental rights was in the best interests of the children.

Affirmed.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace